## Reeves v. Gay.

1. Section 1455 of the code, which was so amended by the act of September 5th, 1883 (Acts of 1882-3, p. 49), as to require that elections upon the question of "fence or no fence" should be held on the first Wednesday in July following the filing of a petition with the ordinary, instead of "at such time as said ordinary shall appoint," was not affected, as to the time of holding such elections, by the act of November 12th, 1889 (Acts of 1889, p. 60), which prescribed the qualifications of voters in such elections. After the passage of the latter act, the above mentioned section stood, as to the time of holding elections, not as it did originally, but as it did after being amended by the act of 1883, and it also stood thus after the passage of the act of November 26th, 1890 (Acts of 1890-91, vol. 1, p. 69), "to amend the fence laws of this State, and to repeal section 1449 of the code." Consequently, an election upon the question of "fence or no fence," held in Webster county on the 12th day of August, 1891, was unauthorized by law and void, and no right to impound stock thereunder could arise, although such election was declared to be in favor of "no fence." The only day upon which the election could legally have been held was "the first Wednesday in July."

2. The stock of the plaintiff having been unlawfully impounded, and the magistrate before whom the case was tried having awarded him the custody thereof upon a possessory warrant, the superior court was right in upholding the magistrate's judgment and in overruling the *certiorari* thereto.

July 17, 1893.

Possessory warrant. Before Judge Fish. Webster superior court. April term, 1892.

Hudson & Blalock, S. R. Stevens and D. R. Shepherd, for plaintiff in error. J. Harrell, B. F. Harrell, Thornton & McMichael and M. C. Edwards, Jr., *contra*.

Lumpkin, Justice.

1. Section 1455 of the code authorized elections upon "the fence question" to be held at such times as the ordinary might appoint. The act of September 5th, 1883, so amended this section as to require that these elections should be held on the first Wednesday in July following the filing with the ordinary of a petition for an election.

Then came the act of November 12th, 1889, the title of which is as follows: "An act to alter and amend section 1455 of the Code of Georgia of 1882, so as to prescribe the qualifications of voters in the several militia districts of the counties of this State, at any elections held in said districts for the purpose of establishing a stock law for said district, and for other purposes." The only purpose of this act was to prescribe the qualifications of voters in elections upon the question of "fence or no fence." This was accomplished by enacting that after the words "in said district," in the forty-fifth line of the section, there should be inserted certain words prescribing what the qualifications of voters should be. The act then declares how, as a result of this amendment, the section shall read, and proceeds to copy the section, retaining the words declaring that the election shall take place "at such time as said ordinary shall appoint," just as they stood in the original section.

Bearing in mind the amendment to the section made by the act of 1883, it is obvious that no such reading would result from the amendment really made by the act of 1889. The fact is, the act of 1883 was simply overlooked. Nothing in the title of the act of 1889 indicates in any manner whatever an intention to repeal, modify or amend the act of 1883, and nothing in the body of the act of 1889 directly or expressly indicates any such intention. The whole difficulty arises from the fact that, because of overlooking the act of 1883, the act of 1889 was made to declare that the amendment it introduced into the section would produce a certain reading of the section which, in fact, it did not produce.

We hold, without misgiving or doubt, that the act of 1883 was not thus repealed. In the first place, it is manifest that the legislature, by the act of 1889, did not intend to repeal it; and secondly, if they had so intended,

the intention was not constitutionally accomplished, because, in so far as the act of 1889 could be construed as having this effect, it most clearly contains matter different from what is expressed in its title.  Accordingly, we rule that even after the passage of the latter act, the section of the code in question stood, as to the time of holding elections, not as it did originally, but as it did after being amended by the act of 1883.

If the foregoing is sound, it follows, without argument, that the act of November 26th, 1890, "to amend the fence laws of this State, and to repeal section 1449 of the code," does not repeal the act of 1883, or affect section 1455 of the code as thereby amended.  The act of 1890 must be understood as referring to the section as it stood when the latter act was passed, and we have already shown that the section then had engrafted upon it, unaffected by the act of 1889, the amendment made by the act of 1883.

Under this section, therefore, the only day upon which an election of the kind therein provided for could be lawfully held was the first Wednesday in July.  An election held on any other day was necessarily void.  So held the justice of the peace before whom this case originated; so held the judge of the superior court; and so we hold.  This settles the matter finally.

2. The hogs of the plaintiff who sued out the possessory warrant were unlawfully impounded, and the magistrate was right in awarding him the possession of them.                          *Judgment affirmed.*