## IVEY *et al.* v. CITY OF ROME *et al.*

1. When the General Assembly provides for an election to determine the question as to whether the territory of one municipality shall be annexed to the territory of another municipality, and no provision is made in the law for judicial interference, and there is no general law authorizing such interference, and the authority to interfere can not be derived from the common law, a court of equity has no power or jurisdiction over the matter, and all questions arising out of the election must be determined alone by the tribunal constituted by the General Assembly for that purpose.

2. The judge of the superior court has no authority to sustain a demurrer to an equitable petition, or motion to dismiss the same for want of equity, in vacation prior to the term to which the case is returnable.

3. As the petition in the present case is clearly subject to dismissal, the judgment will be reversed, with direction that the order of dismissal be entered in term time.

Argued June 23,—Decided August 14, 1907.

Petition for injunction, etc. Before Judge Wright. Floyd superior court. September 27, 1906.

Ivey and others, as taxpayers of the town of East Rome, filed an equitable petition against the City of Rome, and certain indi-

viduals who were the mayor and councilmen of that city, alleging that in 1906 the General Assembly passed an act authorizing an election to be held in East Rome, to determine whether that town should be annexed to the City of Rome; that the election was held, and the result was reported to be in favor of annexation by a vote of 65 to 63; that before reporting the result the managers recounted the vote, and this count resulted in 65 votes for and 64 votes against annexation. 128 persons had voted at the election. The managers removed two ballots against annexation from the box, and excluded them from the final count. Every vote for annexation was included in the count. Other irregularities in the count were set forth in the petition. It is alleged that the true result was a tie. The prayer of the petition was that the authorities of the City of Rome be restrained from declaring the result, and that at the final hearing a decree be entered that the scheme of annexation had been defeated. When this petition was presented to the judge, he declined to grant the restraining order, and merely issued a rule, calling upon the defendants to show cause why the prayers of the petition should not be granted. By amendment to the petition certain irregularities in the proceedings of the mayor and council of the City of Rome were set forth. At the hearing, which was in vacation, and prior to the return term of the writ, the defendants moved to dismiss the entire proceeding, upon the ground that the court had no jurisdiction to entertain the same. The court sustained this motion and dismissed the case. The plaintiffs excepted.

*Henry Walker,* for plaintiffs.

*John W. & G. E. Maddox,* for defendants.

COBB, P. J. (After stating the facts.)

1. The bill of exceptions and record in this case were filed in the office of the clerk of the Supreme Court during the October term, 1906, and were by the clerk entered upon the docket of that term as a fast writ of error. The case was reached in its order, and argument was had; and when the court took the case under consideration it reached the conclusion that it was improperly docketed as a fast writ of error, and by order the case was transferred to the docket of the present term. *Ivey* v. *Rome,* 126 *Ga.* 806 (55 S. E. 1034). Further argument was had during the present term, and the case is now ripe for decision. By an act

approved August 20, 1906 (Acts 1906, p. 1010), the charter of the City of Rome was so amended as to extend its corporate limits to include all of the territory then lying in the corporate limits of East Rome. It was provided that this act should not become effective until the same was approved by a majority of the voters of East Rome who registered and qualified themselves to vote, according to certain provisions of the act. The manner in which the election should be held was also prescribed; and it was provided the managers of the election should file a report of the result of the same, together with the tally-sheets and ballots, with the mayor and council of the City of Rome at their next regular meeting after the election, and if, upon examination of the report, it should appear that a majority of the persons voting at the election voted in favor of annexation, the mayor and council of the City of Rome should, by resolution, declare the territory of the town of East Rome annexed to the City of Rome from and after the first day of January, 1907, and it was declared to be the duty of the mayor to issue a proclamation to that effect. The act does not provide for any contest of the election. The duty was imposed upon the managers to hold the election, ascertain the result, and report the same to the authorities of the City of Rome, and, in the event that the report showed that a majority of the voters had voted in favor of annexation, the duty was imposed upon the city authorities to so declare by resolution, and it was the duty of the mayor, after such resolution was passed, to make proclamation to that effect. The petition seeks to raise questions as to the effect of irregularities in the manner of conducting the election, counting the vote, and declaring the result. In other words it is sought, by the petitioners, to have a court of equity hear and determine a contest of this election. The judge of the superior court in the first instance, and the judge and a jury of twelve men in the second instance, are called upon to determine questions which, under the act of the General Assembly, were to be determined by the managers of the election, in the manner prescribed in the act. The general rule is that, where the lawmaking power provides for an election to determine any question, which it is legitimate and proper to submit to a popular vote, and no provision is made, in the law, for judicial interference, and there is no general law authorizing such interference, and the right to interfere can

not be derived from the common law, neither a court of law nor a court of equity has any power or jurisdiction over the matter, and all questions arising out of such election must be determined alone by the tribunal constituted by the lawmaking power for that purpose. The courts are powerless to interfere, unless the legislature should see proper to confer such power on them. *Caldwell* v. *Barrett*, 73 *Ga.* 604; *Skrine* v. *Jackson*, 73 *Ga.* 377; *Ogburn* v. *Elmore*, 121 *Ga.* 72 (48 S. E. 702). The petition set forth no cause of action whatever, and was subject to dismissal for this reason.

2. No formal demurrer to the petition seems to have been filed, but a motion was made to dismiss the same, upon the ground that there was no equity therein. This was, in effect, a demurrer to the petition. The motion was made, and an order was passed sustaining the same, in vacation, and before the return term of the case. The case was subject to dismissal, but the judge was without authority to sustain the demurrer to the petition or the motion to dismiss the same, for want of equity, in vacation, preceding the first term of the case. This seems to be well settled. *Johnson* v. *Cravey*, 120 *Ga.* 1047 (48 S. E. 424); *Stewart* v. *Stewart*, 89 *Ga.* 138 (15 S. E. 23); *Old Hickory Dist. Co.* v. *Bleyer*, 74 *Ga.* 201. But it is said that the petition was so palpably without merit that the judge had authority to strike it from the files of the court. It is unquestionably within the power of the judge to strike any proceeding from the files of the court when it is apparent that the same is not within the jurisdiction of his court; but this power to strike must be exercised at the time when the judge is authorized, under the law, to exercise the powers of a judge in reference to the case. He has no more power to strike the case from the files of the court in vacation than he would have to sustain a demurrer or a motion to dismiss; the effect and consequence of these proceedings being the same. The judge reached the right result, but at the wrong time. The judgment must be reversed, but direction will be given that the order dismissing the case be entered in term time.

*Judgment reversed, with direction. All the Justices concur.*